UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| Y.L., on behalf of J.L., | CIV. NO. 2:14-1364 WBS AC |
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTION FOR ATTORNEYS' FEES |
| v. | |
| MANTECA UNIFIED SCHOOL DISTRICT and SAN JOAQUIN COUNTY OFFICE OF EDUCATION, | |
| Defendants. | |

----oo0oo----

Plaintiff Y.L. brings this action against the Manteca Unified School District and the San Joaquin County Office of Education (collectively "defendants") for attorneys' fees incurred from a state administrative action she brought against defendants under the Individuals with Disabilities Education Act ("IDEA"). (Pl.'s Mot., Mem. ("Pl.'s Mem.") (Docket No. 19).)

I. Factual and Procedural Background

Plaintiff's son, J.L., suffers from autism. (Id. at

1

1  8.)  Plaintiff alleged that defendants denied J.L. a Free and
2  Appropriate Public Education ("FAPE") during the 2012-2013 and
3  2013-2014 school years by, inter alia, "failing to assess [him]
4  in all areas of suspected disability," failing to offer him
5  "appropriate services in the areas of applied behavior analysis,"
6  failing to "[a]ddress [his] English-language development," and
7  "prevent[ing his] Parent[s] from meaningfully participating in
8  [his] educational decision-making process."  (Pl.'s Mot. Ex. A,
9  California Office of Administrative Hearings Decision ("ALJ
10 Decision") at 2-3 (Docket No. 19-2).)

11         Plaintiff brought these claims before the California
12 Office of Administrative Hearings in 2014.  (Pl.'s Mem. at 3.)
13 The administrative law judge ("ALJ") presiding over her case
14 divided her claims into three issues and subdivided the issues
15 into seventeen sub-issues.  (See ALJ Decision at 2-3 (dividing
16 claims into issues 1a-b, 2a-j, and 3a-e).)  The ALJ held that
17 plaintiff prevailed fully on one sub-issue and partially on
18 another, and lost on the remaining sub-issues.  (Id. at 38.)

19         With respect to the sub-issue plaintiff prevailed fully
20 on, sub-issue 2j, the ALJ found that defendants "failed to permit
21 parental participation" as required under the IDEA "by proceeding
22 with [an] August 6, 2013 [Individualized Education Program]
23 meeting in [J.L.'s parents'] absence."[1]  (Id. at 34.)  Under

---

[1] An Individualized Education Program ("IEP") is a "plan that details the support and services (such as speech therapy or multisensory reading instruction) a school will provide to meeting the individual needs of a student with a disability who qualifies for special education."  The IEP Meeting: An Overview, https://www.understood.org/en/school-learning/special-services/ieps/the-iep-meeting-an-overview# (last visited Oct. 20,

2

1  Ninth Circuit precedent, the ALJ explained, defendants must
2  include parents in Individualized Education Program ("IEP")
3  meetings unless "the parents affirmatively refuse to attend."
4  (Id. at 32.)  As remedy for this violation, the ALJ ordered
5  defendants to "provide staff responsible for noticing and
6  convening IEP team meetings with two hours of training regarding
7  steps to ensure parent attendance at IEP team meetings, the
8  conditions under which meetings can take place in their absence,
9  and documentation of attempts to ensure parent attendance."  (Id.
10 at 38.)
11        With respect to the sub-issue plaintiff prevailed
12 partially on, sub-issue 3d, the ALJ found that defendants
13 "substantive[ly] deni[ed]" J.L. a FAPE by failing to "offer[ him]
14 an hour a week of pull-out individual speech and language
15 services" from November 20, 2012 through October 2, 2013.  (Id.
16 at 37.)  The ALJ ordered defendants to "provide as compensatory
17 education 30 minutes a week of pull-out individual speech and
18 language service from the beginning of the 2014 extended school
19 year through the end of the 2014-2015 school year."  (Id. at 38.)
20 Plaintiff calculates this award to total 21.5 hours of
21 compensatory education.  (Pl.'s Mem. at 15.)
22        Plaintiff now moves for attorneys' fees under the IDEA
23 based on her success on these two sub-issues.  (Id. at 5-6.)
24 II.  Discussion
25        The IDEA provides that a district court may, "in its

---

2016).  An IEP meeting is a meeting of a child's parents, the
child's teachers, a school psychologist, and a school district
representative at which the parties discuss how to best structure
the IEP for the child's benefit.  See id.

discretion . . . award reasonable attorneys' fees as part of the costs--to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B).

In deciding attorneys' fees motions under the IDEA, the court must first decide whether the moving party is a prevailing party in the underlying matter. See id. The court then calculates reasonable attorneys' fees pursuant to a two-step process. First, the court determines the lodestar calculation-- "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Second, the court may adjust the lodestar figure "pursuant to a variety of factors." Gonzalez v. City of Maywood, 729 F.3d 1196, 1209 (9th Cir. 2013); see also Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975) (enumerating factors on which courts may rely in adjusting the lodestar figure).

In determining the size of an appropriate fee award, the Supreme Court has emphasized that courts need not "achieve auditing perfection" or "become green-eyeshade accountants." Fox v. Vice, 563 U.S. 826, 838 (2011). Rather, because the "essential goal of shifting fees . . . is to do rough justice," the court may "use estimates" or "take into account [its] overall sense of a suit" to determine a reasonable attorneys' fees. Id.

A. Prevailing Party Status

A plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103,

1  111-12 (1992).  A "'material alteration of the legal relationship
2  occurs [when] the plaintiff becomes entitled to enforce a
3  judgment, consent decree, or settlement against the defendant.'"
4  Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1118 (9th Cir. 2000)
5  (quoting Farrar, 506 U.S. at 113).
6       With respect to sub-issue 3d in this case, the ALJ
7  found that defendants "substantive[ly] deni[ed]" J.L. a FAPE by
8  failing to "offer[ him] an hour a week of pull-out individual
9  speech and language services" for the 2012-2013 school year.
10 (ALJ Decision at 37.)  To remedy that violation, the ALJ awarded
11 J.L. 21.5 hours of compensatory education.  (Id. at 38.)  Because
12 plaintiff is entitled to enforce the ALJ's award of compensatory
13 education against defendants, she is the prevailing party for
14 purposes of this Motion.
15      Defendants argue that plaintiff is not the prevailing
16 party because she is not entitled to enforce the ALJ's remedy
17 with respect to sub-issue 2j (i.e., requiring defendants to hold
18 a two-hour training session), (see Defs.' Opp'n at 5 (Docket No.
19 22)), and her victory on sub-issue 3d "was so de mimimis as to
20 not confer prevailing party status" upon her, (id. at 8).
21      Even assuming that defendants are correct in arguing
22 that plaintiff did not obtain prevailing party status from sub-
23 issue 2j alone because holding an IEP meeting in plaintiff's
24 absence was merely a "technical procedural violation",
25 plaintiff's victory on sub-issue 3d is not de minimis so as to
26 deprive her of prevailing party status.  The United States
27 Supreme Court has held that "[t]he prevailing party inquiry does
28 not turn on the magnitude of the relief obtained."  Farrar, 506

5

U.S. at 113-14. So long as plaintiff obtains "at least some relief," she is the prevailing party. D.F. v. Sacramento City Unified Sch. Dist., No. 2:13-1887 WBS CKD, 2014 WL 2526811, at *2 (E.D. Cal. June 4, 2014). The ALJ's award of 21.5 hours of compensatory education is "at least some relief." Accordingly, plaintiff's victory on sub-issue 3d is sufficient to convey prevailing party status upon her.

B. Reasonable Rate

"A reasonable rate is typically based upon the prevailing market rate in the community for 'similar work performed by attorneys of comparable skill, experience, and reputation.'" Ontiveros v. Zamora, 303 F.R.D. 356, 373–74 (E.D. Cal. 2014) (quoting Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986)). "The relevant community is generally the forum in which the court sits." Id. (citing Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997)). The administrative proceeding in this case was held in Stockton, CA, (ALJ Decision at 2), which is located the Eastern District of California.[2] Accordingly, the prevailing rates in this district apply.

Plaintiff seeks $350 per hour for counsel Evan Goldsen and $275 per hour for counsel Carly Christopher. (Pl.'s Mem. at 12.) Counsel Goldsen had practiced law for five years and counsel Christopher for two at the time of the administrative

---

[2] The court takes judicial notice of Stockton's location in the Sacramento division of the Eastern District of California pursuant to Federal Rule of Evidence 201. See Fed. R. Evid. 201(c)(1) ("The court may take judicial notice on its own . . . .").

6

hearing.  (Id. at 13.)  Both are attorneys at the Special Education Collaboration Project, a San Francisco-based organization that focuses on "representing children with special needs regarding their educational rights." (Id. at 17.)  The hearing in this matter was counsel Goldsen's third as an attorney and counsel Christopher's first.  (Defs.' Opp'n at 12.)

Defendants, by contrast, believe that $225 per hour is a reasonable rate for counsel Goldsen, and $200 for counsel Christopher.  (Id. at 14.)

The court finds S.A. v. Patterson Joint Unified Sch. Dist., No. 1:10-CV-00943 OWW, 2010 WL 3069204 (E.D. Cal. Aug. 2, 2010), a case cited by plaintiff, to be informative here.  In Patterson, this court found that special education attorneys with six and two years of legal experience merited rates of $275 and $220 respectively for their work on an IDEA administrative case. See id. at *11.  Such rates are in proximate accord with "several recent cases" in which this court has found "hourly rates of $300 for partners, between $175 and $260 for senior associates with significant experience, and $150 for junior associates to be reasonable for disability access cases in the Sacramento legal community." Levine v. Sleep Train, Inc., No. 2:15-00002 WBS AC, 2016 WL 4368107, at *3 (E.D. Cal. Aug. 16, 2016).

Using Patterson and Levine as guides, the court finds that $250 per hour for counsel Goldsen and $220 per hour for counsel Christopher are reasonable rates.

Plaintiff cites two cases in which federal district courts applied higher rates for similarly experienced attorneys who worked on similar cases.  (See Pl.'s Mem. at 13-14.)  Those

7

cases, however, were heard in the Central District of California, which is a different legal market. Plaintiff also cites two declarations from third-party attorneys who testify that the rates plaintiff requests for counsel Goldsen and Christopher are reasonable. (See id. at 14.) Neither declaration purports to be addressing rates in the Sacramento legal community or other communities in this judicial district, however. Accordingly, the court will not alter its determination of counsel Goldsen and Christopher's rates.

C. Reasonable Hours

In determining the number of reasonable hours spent on the case, the court must heed "the Ninth Circuit's admonition that, as a general rule, 'the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case.'" Deocampo v. Potts, No. CIV. 2:06-1283 WBS, 2014 WL 4230911, at *1 (E.D. Cal. Aug. 25, 2014).

Here, plaintiff states that counsel Goldsen and Christopher spent 76.32 and 322.22 hours respectively on her case. (Pl.'s Mem. at 21.) Plaintiff seeks fees for an additional 34.8 hours that counsel Goldsen spent litigating this Motion, (Pl.'s Reply at 15-16 (Docket No. 23), and deducts 85.25 hours from counsel Christopher's time because that time was spent "drafting and filing [a] closing brief" which the ALJ struck in its entirety. (Pl.'s Mem. at 21.) In total, plaintiff seeks fees for 111.12 hours of counsel Goldsen's time and 239.97 hours of counsel Christopher's time, plus $2,009.58 in litigation

8

expenses.³  (Id.)

Defendants raise several objections to this calculation.  First, they argue that the court must deduct 11.15 hours from counsel Goldsen's time because that time was spent performing "clerical work."  (Defs.' Opp'n at 14-15.)  Though clerical work is billable if it is "the prevailing practice in a given community," Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co., 460 F.3d 1253, 1257 (9th Cir. 2006), this court has held that clerical work is not billable in the Sacramento legal community, see Ferrando v. Comm'r of Soc. Sec., No. 2:08-CV-02470 GEB, 2013 WL 1087800, at *4 (E.D. Cal. Mar. 14, 2013) ("purely clerical tasks . . . [are] not separately compensated").  Accordingly, the court will deducted 4.75 hours spent on "copying" and "hole punching" from counsel Goldsen's time, though it will not deduct 6.75 hours spent on putting together an evidence disclosure from his time as defendants request because that task requires attorney skill.

Second, defendants argue that the court should deduct travel time from counsel Goldsen and Christopher's fees because plaintiff has not offered a "specific reason[]" for hiring out-of-area counsel.  (Defs.' Opp'n at 16.)  "[S]uch a showing is not required," however, and this court has held that "[r]easonable attorney's fees include reasonable travel time at the full hourly rate."⁴  Davis v. Sundance Apartments, No. CIV S-071922 FCD GGH,

---

³ The expenses include car mileage, copying costs, fax costs, and office supplies costs.  (See Pl.'s Mot. Ex. B, Billing Invoice at 1-8 (Docket No. 19-3).)

⁴ The only case defendants cite in favor of deducting travel time--Riker v. Distillery, No. 208CV00450MCEJFM, 2009 WL 4269466 (E.D. Cal. Nov. 25, 2009)--is easily distinguishable.  In

2008 WL 3166479, at *5 (E.D. Cal. Aug. 5, 2008) (citing U.S. v. City and County of San Francisco, 748 F.Supp. 1416, 1422 (N.D. Cal. 1990)).  Accordingly, the court will not deduct travel time.

Third, defendants argue that the court must deduct hours spent at the administrative hearing from either counsel Goldsen or counsel Christopher's time because "no 'second chair' was necessary" at the hearing.  (Defs.' Opp'n at 16.)  The practice of a "second chair", however, has now become common.  "As a general rule . . . two attorneys [may] bill for their appearances at court proceedings when it is reasonable and necessary for a 'second-chair' to appear with lead counsel."  Blake v. Nishimura, No. CIV 08-00281 LEK, 2010 WL 1372420, at *8 (D. Haw. Mar. 31, 2010).  Plaintiff states that a second-chair was necessary in this case.  (Pl.'s Reply at 13-14.)  The court finds no reason to second-guess that representation.[5]  See

---

Riker, this court declined to award a plaintiff travel fees because her counsel was traveling from Walnut Creek, CA to Sacramento, despite having a practice that was primarily based in Sacramento.  See id. at *3.  Here, there is no indication that counsel Goldsen and Christopher primarily practice in Sacramento.

[5] The two cases defendants cite in favor of their 'second chair' argument--Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento, No. CIV. S-14-0666 KJM, 2014 WL 5698448 (E.D. Cal. Nov. 4, 2014) and Riker, 2009 WL 4269466--are distinguishable.  In Lee-Tzu Lin, the court found that defendants' attorneys engaged in "duplicative efforts" by each working on a "non-complex" anti-SLAPP motion because they had thirty, twenty, and eighteen years of legal experience respectively.  Lee-Tzu Lin, 2014 WL 5698448, at *6-7.  Here, counsel Goldsen and Christopher only had five and two years of legal experience at the time of plaintiff's hearing.  (Pl.'s Mem. at 12.)  In Riker, the court found that plaintiff's attorneys engaged in duplicative efforts because multiple attorneys are not necessary to attend "certain case-related activities like [a] site visit, Plaintiff's deposition, and [a] voluntary settlement conference."  Riker, 2009 WL 4269466, at *3.  Here, by contrast, defendants are

10

1 Deocampo, 2014 WL 4230911, at *1 ("[T]he court should defer to
2 the winning lawyer's professional judgment . . . .").
3           Fourth, defendants argue that the court should deduct
4 ten hours from time spent drafting plaintiff's complaint because
5 "[i]t should not take nearly a week of full time employment to
6 draft a complaint." (Defs.' Opp'n at 14.) That argument also
7 touches upon a matter of professional judgment which the court
8 will not second-guess. See Deocampo, 2014 WL 4230911, at *1.
9           Fifth, defendants note that they made a $15,000
10 settlement offer to plaintiff which plaintiff rejected. (Defs.'
11 Opp'n at 17.) Under the IDEA, plaintiff may not recover fees
12 incurred after a settlement offer if the relief she obtained "is
13 not more favorable . . . than the offer of settlement." 20
14 U.S.C. § 1415(i)(3)(D)(i). That rule, however, only applies if
15 "the offer is made . . . at any time more than 10 days before the
16 [administrative] proceeding begins." Id. Here, for some unknown
17 reason, defendants made their settlement offer to plaintiff some
18 six months after the administrative proceeding had concluded.
19 (See Defs.' Opp'n at 18 (indicating that offer was made on
20 November 19, 2014); ALJ Decision at 39 (decision dated May 7,
21 2014).) Because the offer was not made "more than 10 days before
22 the [administrative] proceeding beg[an]," it does not bar
23 plaintiff from recovering fees incurred after the offer was made.
24           The court therefore finds the following hours and
25 expenses to be reasonable: (1) 106.37 hours of counsel Goldsen's

---

complaining of counsel Goldsen and Christopher's decision to each attend the hearing at which their client's case would be decided. (Defs.' Opp'n at 15-16.) Accordingly, Lee-Tzu Lin and Riker are distinguishable.

11

time, including 34.8 hours spent litigating this Motion; (2) 239.97 hours of counsel Christopher's time; and (3) $2,009.58 in litigation expenses.

D.  Lodestar Adjustment

While the lodestar figure is "presumptively reasonable," district courts "may adjust [that] figure based upon the [twelve] factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975)." Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 622 (9th Cir. 1993). "The court need not consider all twelve factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." Kessler v. Associates Fin. Servs. Co. of Hawaii, 639 F.2d 498, 500 n.1 (9th Cir. 1981).

In light of the limited nature of plaintiff's victory, the court finds that it is appropriate to consider the eighth factor of Kerr: "the amount involved and the results obtained." Kerr, 526 F.2d at 70. As discussed above, plaintiff brought a case before the ALJ seeking relief on seventeen sub-issues.[6] (ALJ Decision at 2-3.) The relief she sought included provision of "IEP goal progress reports," Spanish translation of IEP materials, "functional analysis assessment," "assistive technology assessment," "qualified one-to-one aide," "occupational therapy," "speech and language" therapy, opportunities to observe J.L. at school, and other relief. (Id.)

---

[6] Defendant argues that the ALJ in fact divided plaintiff's claims into fifty-one sub-issues, with each school year and clause within a sub-issue accounting for separate sub-issues. (See Defs.' Opp'n at 8-10.) Defendants cite no support for this interpretation of the ALJ's organization of claims, however, and the court sees no reason to adopt it.

12

The ALJ held that plaintiff prevailed fully on one sub-issue and partially on another, and lost on the other issues. (Id. at 38.) For plaintiff's victories on sub-issues 2j and 3d, the ALJ awarded J.L. 21.5 hours of compensatory speech and language instruction and required defendants to hold a two-hour staff training on IEP meetings. (Id.)

"A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley v. Eckerhart, 461 U.S. 424, 440 (1983). "[A] court has discretion to adjust the lodestar calculation downward based on the prevailing party's limited degree of success." Patterson, 2010 WL 3069204, at *3.

In recognition that her victory was narrow, plaintiff concedes that a 30% reduction to counsel Goldsen and Christopher's fees (not including fees incurred in litigating this Motion) is appropriate. (Pl.'s Mem. at 22.) Defendants, on the other hand, argue that the court should apply a 67% to 90% reduction. (Defs.' Opp'n at 19.)

The court again finds Patterson to be informative. In that case, which also involved an alleged denial of FAPE and improper administration of IEP, the court held that attorneys who had prevailed fully on two and partially on nine of thirty-three issues raised before an ALJ should have their fees "reduced by 30% to account for Plaintiffs' somewhat limited success in relation to the overall litigation." Patterson, 2010 WL 3069204, at *13. The ALJ in Patterson awarded the Patterson plaintiff 10 hours of speech and language therapy, 6.7 hours of occupational therapy, 25 hours of one-on-one tutoring, and various student

13

assessments, and required the school district to develop a written protocol regarding restraint of special needs children during incidents of aggression. Id. at *5.

Using Patterson as a rough guide, the court finds that a 60% reduction is appropriate here because in litigating a similar case as Patterson, plaintiff's counsel achieved a similar but lesser degree of success. It is true that the Patterson plaintiff brought more issues than plaintiff did here, but even accounting for the proportion of issues brought to issues won, the Patterson plaintiff won on about twice as many issues as plaintiff did.[7] A 60% reduction is in proximate accord with what defendants believe to be an appropriate adjustment in this case. (See Defs.' Opp'n at 19 (citing J.M. v. Capistrano Unified Sch. Dist., No. SACV 10-0185 AG MLGX, 2011 WL 1326905 (C.D. Cal. Mar. 31, 2011), which applied a 66.67% reduction).) Accordingly, the court will apply a 60% reduction to counsel Goldsen and Christopher's fees, not to include fees incurred in litigating this Motion.

### E.  Lodestar Calculation

Based on the above analysis, the total fees and expenses calculation in this case is as follows:

Goldsen: 71.57 x $250 x 0.4 =                $7,157.00

Christopher: 239.97 x $220 x 0.4 =          $21,117.36

Fees for Drafting this Motion: 34.8 x $250 = $8,700

---

[7] Assuming that a partial victory is treated as half a victory, plaintiff in this case won 1.5 out of 17 issues (mathematically equal to 3 out of 34 issues), while the Patterson plaintiff won 6.5 out of 33 issues. This is only a rough guide. See Fox, 563 U.S. at 838 (district courts need only achieve "rough justice" and may "use estimates").

14

|   |   |
|---|---|
| Litigation Expenses: | <u>$2,009.58</u> |
|   | $38,983.94 |

IT IS THEREFORE ORDERED that plaintiff's Motion for attorneys' fees be, and the same hereby is, GRANTED IN PART. Defendants are directed to pay plaintiff $38,983.94 in attorneys' fees and litigation expenses.

Dated:   November 7, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE